IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMIE CUTLER ) | |
| ) | |
| v. ) | No. 3:14-1149 |
| ) | Judge Trauger/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To: The Honorable Aleta A. Trauger, District Judge

REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under the Social Security Act. The case is currently pending on plaintiff's motions for judgment on the administrative record (Docket Entry No. 8) and to remand (Docket Entry No. 11), to which defendant has responded (Docket Entry Nos. 9 and 12). Plaintiff has further filed a reply in support of her motion for judgment. (Docket Entry No. 10) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 6),[1] and for the reasons given below, the undersigned recommends that plaintiff's motions for judgment and to remand be DENIED, and that the decision of the SSA be AFFIRMED.

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

## I. Introduction

Plaintiff filed her application for disability insurance benefits on June 22, 2011, alleging a disability onset date of March 31, 2006, due to back problems and retinal detachment. (Tr. 116, 142) Plaintiff's claim was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her claim by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on July 3, 2013, when plaintiff appeared with counsel and gave testimony. (Tr. 33-49) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until August 12, 2013, when he issued a written decision finding plaintiff not disabled. (Tr. 19-26) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 2006 through her date last insured of March 31, 2006 (20 CFR 404.1571 *et seq.*).

3. Through the date [of this decision], the claimant had the following medically determinable impairments: herniation and desiccation of the lumbar spine, left and right retinal detachment, and tear of meniscus/right knee tear, and cervical disc bulge (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 31, 2006, the alleged onset date, through March 31,

2006, the date last insured (20 CFR 404.1520(c)).

(Tr. 21-22, 26)

On January 30, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-8), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following review of the record is taken from plaintiff's brief, Docket Entry No. 8-1 at pp. 3-7:

**1. Plaintiff's age, education, and work experience.**
The plaintiff, Ms. Jamie Cutler, was born on March 7, 1950 (Tr. 50). Ms. Cutler was 56 on her alleged onset date and date last insured of March 31, 2006, and she had reached the age of 63 on the date of her administrative law judge hearing. (Tr. 31). The plaintiff is a highly educated person having four or more years of college (Tr. 142) and who has been employed as a college level English instructor as well as a high school English teacher. (Tr. 143). Ms. Cutler has worked the following jobs: High school English teacher, College level English instructor, and a Hotel manager. (Tr. 131-137).

**2. Summary of the physical and mental impairments alleged by Plaintiff.**
Claimant has alleged the following physical and mental impairments: Quadruple scoliosis, spine/bulging disc, retinal detachment (Tr. 142). Additionally, Claimant has alleged symptoms regarding a right knee injury, neck pain, and affective disorders – bipolar syndrome. (Tr. 142-147). In the Adult Disability Report dated 8/23/2011 Claimant stated that her back hurts constantly, that she cannot concentrate because of her pain. Additionally, she stated that she needed to take a pain pill and a sleeping pill to get any sleep. Though the Claimant said that she could do household chores, she stated that she was greatly limited in what she could do and that doing the chores took her a long time and that she required the assistance of her boyfriend to accomplish the tasks. Claimant also stated that her concentration was affected by her pain and, presumably, from fatigue form sleep deprivation

and / or poor sleep patterns. (Tr. 149-158).

Claimant stated in a Disability Report dated November 16, 2011 that she continued to have severe and debilitating pain in her back and neck and could not work or concentrate due to her pain. (Tr. 162-168).

Claimant stated in a self produced and submitted correspondence to the Social Security Administration dated 10/12/2013 that her retinal detachment and subsequent treatment to correct her vision resulted in her being unable to see for several months, this began in December 2005 and continued until early 2006, within her insured dates and prior to her alleged onset date. In this letter, Ms. Cutler states that she "sees double". Additionally, claimant notes that beginning in December 2005 her vision has gotten progressively worse (Tr. 202-205).

In a letter dated September 12, 2013, Claimant outlines that her vision had been poor well before 2006 and that she had previously had Lasik treatment to correct her failing vision. Ms. Cutler goes on to explain that this condition is likely hereditary and that her disabling vision was already bad, but became far worse and making it impossible to work before 2006. (Tr. 207-209).

### 3. Outline of the pertinent factual, medical, and vocational evidence in the record.

### a. Relevant testimony:

The Claimant testified at the Administrative Law Judge hearing that prior to the date of March 30th, 2006, the Social Security Administration's determination of her date last insured, that she had always had back problems (Tr. 37). Claimant further testified that she had been diagnosed with osteoporosis and bulging discs and a protruding disc. (Tr. 37).

Claimant further testified that she had been involved in a motor vehicle collision in 2004, and so much of her problems stemmed from this incident, or pre-existing problems increased in severity. (Tr. 38). Claimant testified that she had received medical treatment for her conditions between 2004 and 2006 from doctors Shinar or Schoettle (sp?), Fischer and Clifford. Doctors Shinar or Schoettle (sp?) and Fischer are chiropractors and Dr. Clifford is an orthopedic surgeon. (Tr. 38).

Claimant also testified that she had undergone physical therapy with Dr. Clifford and had also received treatment from Dr. Mackey and at Spine and Nerve Institute (Tr. 38).

Claimant testified that prior to her car accident in 2004, that she "had a pretty full life. I managed a hotel and I taught college and I raised my two children. And I was very active." (Tr.39).

When asked how her back problems, particularly between the time of 2004 and 2006 (the critical time period in this inquiry as this is the period between her motor vehicle collision that was either the source of her problems or made worse her pre-existing conditions and the date of last insured in March 2006 as determined by the Social Security Administration) had affected her functioning, Claimant responded that "it's been harder for me to sit … harder for me to stand … it's harder for me to concentrate. I can't get work done because I'm in pain all the time." (Tr. 39). When asked how her back condition affected her endurance and strength during the same significant period, between 2004 and March 2006, Claimant testified "it just got harder and harder to do anything." (Tr. 39). Further, Claimant testified that it was during this time that she began to use a cane. (Tr. 40). Claimant also testified that during this period, 2004 to 2006, she could only stand "10 or 15 minutes of one of them I'd sit down … I'd take turns sitting /standing." (Tr. 40).

As to how her back problems affected her ability to perform her duties as an instructor, Claimant testified that an instructor must be able to "command the room" and that "you have to be able to concentrate and help your students and answer their questions." (Tr. 40). Relevant to this testimony is the sworn testimony of board certified vocational rehabilitation counselor and the vocational expert on the day of the hearing, Ms. Gail Ditmore. (Tr. 47). Ms. Ditmore testified that as to Claimant's past relevant work as a high school English teacher, 091.227-010, light, SVP 7, skilled; job specific skills, no transferability of any skills (Tr. 48) and for Claimant's past relevant work as a college English professor at 090.227-010, light, SVP 8, highly skilled but no transferability. (Tr. 48). Ms. Ditmore further opined that "even if there were any transferability, the age factor at [age] 55 would preclude any transferability." (Tr. 48). Claimant's date of birth is March 7, 1950 (Tr. 116) making her between 54 and 56 during the crucial time period of 2004 to 2006.

As to Claimant's past job as a hotel manager, Ms. Cutler stated that standing and being on her feet and aware were necessary for that work. (Tr. 41) Claimant also testified that the work as a hotel manager required her to need to lift objects. (Tr. 41)

Claimant suffered her first retinal detachment in December of 2005 (Tr. 41). Claimant stated that she had "extensive surgery" to correct this ailment (Tr. 42) and that even after the surgeries, she had difficulty reading and difficulty driving a car, stating "I can read, but I have to put my eyes really up close, so I have to bend over to read" (Tr. 42). Claimant further stated that this problem with her eyesight negatively affected her ability to perform her

duties as an instructor (Tr. 42) and her duties as a hotel manager (Tr. 43).

(Docket Entry No. 8-1 at 3-7)

As further referenced in plaintiff's brief, the medical evidence in the record consists of, e.g., multiple diagnostic scans and reports of epidural steroid injections to address:

> "neck pain with spondylitis with displacement" (Tr. 217), history of "lumbago" (Tr.218, 259, 262, 265, 274, 290, 354), history of "low back pain" (Tr. 219), history of "thoracic or lumbosacral neuritis or radiculitis" (Tr. 220, 263), history of "lumbar radiculopathy and degeneration of intervertebral disc" (Tr. 221, 264, 268, 271, 272, 288, 298), history of "degeneration of intervertebral disc and cervical spondylitis without myelopathy" (Tr. 267), history of "lumbar spinal stenosis" (Tr. 269, 292), history of degenerative disc disease, lumbar scoliosis, [and] numbness in both hands and feet for several years without specific injury (Tr. 276, 294, 296).

(Docket Entry No. 8-1 at 7) The items referenced above were dated in the years 2010 to 2013. Additional references to pertinent medical records are contained in the discussion below.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th

Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

1. Plaintiff's Motion for Sentence Six Remand

Plaintiff seeks remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), for agency consideration of new and material evidence, consisting of 124 pages of medical records which predate March 31, 2006, her date last insured for benefits. Invoking sentence six, the court may order a return to the agency for its adjudicators to consider evidence that was not previously before them, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986).

Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

Regarding newness, plaintiff has not made a showing that this evidence (including medical records dated between May and December 2005) was unavailable to her at the time her case was pending before the ALJ. She merely asserts that, "at the time of filing her claim for benefits and until recently, [she] was unaware of the existence of the medical records...." (Docket Entry No. 11, ¶ 4) Plaintiff makes no argument at all regarding

9

materiality.  As to the requirement of good cause, plaintiff asserts that, "[d]ue to the various medications being taken by Plaintiff during the time frame in which the 'Exhibit A' medical documentation was created, Plaintiff was subsequently unable to remember that the treatment evidenced in 'Exhibit A' took place and consequently failed to include them in her claim for benefits."  Id.  However, the records themselves do not establish any medication regimen which could be expected to interfere with plaintiff's memory of treatment during a large portion of 2005, nor does any such medication regimen appear from the pages of the administrative record as currently constituted.  The Sixth Circuit takes a "harder line" on the good cause test, requiring a "valid reason" for not procuring and submitting evidence prior to the ALJ hearing.  Foster, 279 F.3d at 357 (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d at 554).  No such reason has been offered in this case.  Accordingly, plaintiff has failed to meet her burden of showing that a sentence six remand is appropriate.

    2.  Plaintiff's Motion for Judgment on the Administrative Record

Plaintiff first argues for reversal of the ALJ's decision on grounds that he failed to properly account for her debilitating pain in reaching his decision that plaintiff's medically determinable impairments were nonsevere as of her date last insured.  The Sixth Circuit has recognized that the requirement of proving the severity of an impairment at step two of the sequential evaluation process is a *de minimis* hurdle for claimants to clear, as it merely requires proof that the impairment rates as something more than "a slight abnormality that minimally affects work ability regardless of age, education, and experience."  Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985)).  However, if the claim to benefits is

"totally groundless" solely from a medical standpoint, it is properly dismissed at this step. Id. at 863.

Here, plaintiff alleges that the pain which was disabling as of the expiration of her insured period on March 31, 2006, "was due to her back and neck trouble and was made worse following the motor vehicle collision in 2004." (Docket Entry No. 8-1 at 9) However, while the ALJ noted this allegation in reviewing plaintiff's testimony (Tr. 24), he rightly observed that the only objective evidence of neck and back impairments in the record was generated in 2007 or thereafter, and many of the findings in the 2007 series of MRIs were characterized as only mildly abnormal. (Tr. 24-25) In fact, the 2007 cervical and lumbar MRIs (performed on January 11 and June 5, respectively) were ordered to assess plaintiff's complaints in the wake of a fall she suffered on November 26, 2006 (Tr. 211, 213), as were MRIs of her right shoulder and right knee (Tr. 212, 214), minimizing their value to the analysis of plaintiff's condition as of her date last insured. Plaintiff's only offering of medical evidence predating the expiration of her insured status are the records of a chiropractor who prescribed "neuromuscular massage therapy to the cervical, thoracic and lumbo-sacral spines" once or twice a week between June 2002 and June 2004 (Tr. 305-318), to treat symptoms that he appears to have rated as mild in his most recent visits with plaintiff. (Tr. 305-06) While this proof confirms that plaintiff was not entirely free of symptoms in these regions prior to her date last insured, it is plainly insufficient to establish the medical severity of any subsequently diagnosed impairments at that time. Moreover, plaintiff's reliance upon Stennett v. Comm'r of Soc. Sec., 476 F.Supp.2d 665 (E.D. Mich. 2007), is misplaced. That case was decided upon a record of subjective pain complaints backed by abundant objective evidence of an underlying medical condition, a record so one-sided that

the case was remanded by the district court for an immediate award of benefits.  Stennett is not analogous to the case at bar.

It is plaintiff's burden to prove the severity of her impairments.  Higgs, 880 F.2d at 863.  Citing the absence of any medical evidence establishing the objective severity of plaintiff's neck and back impairments prior to March 31, 2006 (Tr. 25), the fact that plaintiff returned to work from August 2007 to March 2008 (Tr. 23), and her report that she engaged in a moderate amount of daily activity even as of August 2011 (Tr. 25), the ALJ concluded that the record failed to establish that any of plaintiff's medically determinable impairments were severe during her insured period,[2] despite her testimony that her neck and back pain became severe following the 2004 car wreck.  The undersigned concludes that this determination is supported by substantial evidence.  See Higgs, 880 F.2d 860 (affirming denial on grounds of nonseverity of impairment, upon finding that "[t]here is nothing in the objective medical record credibly suggesting that Mrs. Higgs was significantly affected by any of her impairments on or before [her date last insured of] June 30, 1979[,]" and that subsequent evidence was only "minimally probative of her condition in 1979").

Plaintiff's remaining arguments take issue with the ALJ's failure to consider factors which only come into play during subsequent steps of the sequential evaluation

---

[2] Regarding plaintiff's 2005 detached retina in her left eye, the ALJ found that "[t]he claimant [suffered] her first retinal detachment in 2005 prior to the date last insured, but no records show that she had any significant functional limitations following her initial retinal procedure.  No treating source provided a function-by-function analysis of the claimant's ocular capacity." (Tr. 24)  Plaintiff does not cite any evidence of enduring limitations following her left eye surgery on December 21, 2005. (Tr. 224-25)  She makes a reference in her reply brief that headaches were diagnosed as "continu[ing]" by her eye doctor in 2007 (Docket Entry No. 10 at 2), but again, there is no objective medical evidence establishing the severity of her left eye condition prior to March 31, 2006, nor of any side effects of the retinal detachment or corrective surgery at that time.

12

process.  However, as the ALJ's decision recites, "[t]he steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (Tr. 20)  In light of the substantially supported finding in this case of no severe impairment, plaintiff's remaining arguments are moot.

## IV.  Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motions for judgment on the administrative record (Docket Entry No. 8) and to remand (Docket Entry No. 11) be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 13th day of August, 2015.

 s/ John S. Bryant  
JOHN S. BRYANT  
UNITED STATES MAGISTRATE JUDGE